IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

WILLIAM E. BIRDSONG, et al.                                          PLAINTIFFS

V.                                                 CIVIL ACTION NO. 3:10cv699-DPJ-FKB

THE LINCOLN NATIONAL LIFE                                            DEFENDANTS
INSURANCE COMPANY, et al.

ORDER

This diversity case arises out of Plaintiff William E. Birdsong's purchase of several life-insurance policies.  The matter is before the Court on Defendants' Motion for Summary Judgment [40].  Also before the Court is Defendants' Motion to Strike the Affidavit of Robert Mims [47].  Because Plaintiffs' claims are time-barred or otherwise legally insufficient, the motion for summary judgment will be granted.  The motion to strike is moot.

I.        Facts and Procedural History

In mid-1991, Birdsong's high school classmate and longtime insurance salesman Robert Mims suggested that Birdsong, then 55 years old, switch from his existing life-insurance policies to Chubb Ultraspan 2001 policies.  Birdsong ultimately purchased four Ultraspan 2001 policies based on Mims's alleged representation that if Birdsong paid premiums for eight years, the policies would fund themselves until he reached age 95.  Mims supposedly promised that the policies would self-fund through a non-guaranteed bonus feature, which returned a portion of the cost of insurance to the policies' cash values at the end of the tenth policy year and every five years thereafter.  By the time the policies reached their fifteenth anniversary, Defendants had reduced the amount of the bonuses.[1]  According to Birdsong, the policies therefore failed to

_____

[1]Defendant The Lincoln National Life Insurance Company acquired Chubb's rights, duties, obligations, and liabilities under the subject policies.

perform as Mims promised they would, so Birdsong filed this lawsuit on November 1, 2010.

Additional Plaintiffs include The William E. Birdsong Trust, which owns one of the policies, and

Birdsong's children, Margery B. McCullum, Christopher L. Birdsong, and Virginia B. Culp, who

own another policy.  Plaintiffs assert state-law claims against Defendants for bad-faith breach of

contract, fraudulent inducement, negligent misrepresentation, negligence, gross negligence, and

breach of fiduciary duty.  Notice of Removal [1] Ex. A, Compl.

In their motion for summary judgment, Defendants argue that Plaintiffs' claims are

untimely and otherwise unsupported by the evidence in the record.  Following the initial round of

briefing, the Court requested supplemental briefs to address the application of Mississippi's

borrowing statute and how it determines where Plaintiffs' claims accrued.  Those issues have

now been addressed by the parties.  The Court has personal and subject-matter jurisdiction and is

prepared to rule.

II.       Standard of Review

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil

Procedure when evidence reveals no genuine dispute regarding any material fact and that the

moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [the record] which it

2

believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The

nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing

that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).  In reviewing the evidence,

factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both

parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994) (en banc).  When such contradictory facts exist, the court may "not make

credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and

legalistic arguments have never constituted an adequate substitute for specific facts showing a

genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.

2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.     Analysis

      A.     Motion for Summary Judgment

           1.     Statute of Limitations

The parties have been well-represented by capable counsel, and as their memoranda

demonstrate, the case presents many potential issues raising difficult questions of first impression

in Mississippi.  Ultimately though, the Court concludes that no matter which path you travel, you

reach the same point—the non-contract claims are time-barred.

Before exploring those paths, a summary of the holdings may assist.  To begin with, the

parties address choice of law between Mississippi and Alabama because Mississippi has a three-

year limitations period whereas Alabama employs a two-year period.  *Compare* Miss. Code Ann.

§ 15-1-49(1), *with*  Ala. Code § 6-2-38(l).  This question initially is a red herring because statutes

of limitations are procedural in this context and Mississippi would apply its own law.  *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 432 (Miss. 2006) (citations omitted).  Under Mississippi law, the claim vested and accrued when Birdsong received policies in 1991 containing no reference to the promised bonuses.  Birdsong was therefore on notice of his claims at that time, and the statute expired three years later, some seven years before Plaintiffs filed suit.

Having said that, choice of law could re-enter the analysis if Plaintiffs are correct that Birdsong first learned of his claims in Spring 2008—*i.e.*, more than two but less than three years before he filed.  If so, the Court must consider Mississippi's borrowing statute, which applies a foreign state's more restrictive statute of limitations to claims that accrued in that other state but are time-barred in that other state.  *See* Miss. Code Ann. § 15-1-65.  The Court finds that the borrowing statute applies and that if notice first occurred when Birdsong claims, his lawsuit would still be delinquent under Alabama's borrowed two-year statute of limitations.

a.       When the Claim Accrued Under Mississippi Law

Plaintiffs argue that Mississippi law must apply, but under that law the claim accrued in 1991 and is therefore untimely.  There is no dispute that Birdsong's agent, Mims, told Birdsong there would be a bonus that would allow Birdsong to cease payments after eight years.  Mims described the bonus as "the next thing to a led [sic] pipe guarantee that I had ever seen in my life."  Pls.' Resp. [44] Ex. 2, Mims Dep. at 55.  But as Plaintiffs' initial memorandum concedes, the contract Birdsong received in November 1991 did not reflect the bonus, so Plaintiffs attempt to build their case on an implied obligation.  Pls.' Mem. [44] at 4.

The initial problem with this theory is that the contract included an integration clause that stated, "The entire contract consists of this policy and the application (and any supplemental

4

applications for additional Specified Amounts)."  Defs.' Mot. Summ. J. [40], Ex. H, Policies at

8.  Similarly, the application, which was incorporated into the contract, expressly precluded

reliance on anything Mims may have said:  "The agent has no authority to make, modify, alter or

discharge any policy or the terms of this or any other agreement with the Company."  *Id.* Ex. G,

Applications, at Mims.Subpoena000120.  So the contract excluded any obligations reflected in

documents or representations made beyond the contract itself.  *See Stephens v. Equitable Life*

*Assurance Soc. of U.S.*, 850 So. 2d 78, 83 (Miss. 2003) ("Any alleged oral agreement in this case

does not have any effect on the written insurance contract." (citation omitted)).

     Equally important is the absence of any contract language referencing the non-guaranteed

bonuses.  Under Mississippi law, "if an insured is put on notice by the plain language of the

policy that the agent's verbal representations are false, a fraud claim accrues on the date of the

sale."  *Weathers v. Metro. Life Ins. Co.*, 14 So. 3d 688, 689 (Miss. 2009) (citation omitted).

"However, 'if the plain language of the policy does not clearly contradict the agent's

representations such that the insured is put on notice, a fraud claim accrues when the insured

becomes aware of the misrepresentation.'"  *Bank of Commerce v. SouthGroup Ins. & Fin. Servs.,*

*LLC*, 73 So. 3d 1106, 1110 (Miss. 2011) (quoting *Weathers*, 14 So. 3d at 694).

     Two vanishing-premium cases inform this discussion.  First, in *Stephens v. Equitable Life*

*Assurance Society of the United States*, the insured sued a life insurer and agent to recover for

fraudulent misrepresentation and concealment concerning vanishing premiums, which were

promised by the agent but excluded from the policy.  850 So. 2d at 78.  After limiting the

contract to its terms, the court held that the contract unambiguously contradicted what the agent

told the insured.  *Id.* at 83.  Thus, the claim accrued when the policy was purchased, and as a

result was time-barred.  *Id.* (affirming summary judgment).

The second case, *Weathers v. Metropolitan Life Insurance Co.*, also involved vanishing

premiums but reached a different result.  There, the court examined its holding in *Stephens*,

summarizing it as follows:

> We read *Stephens* to hold that if an insured is put on notice by the plain language
> of the policy that the agent's verbal representations are false, a fraud claim accrues
> on the date of the sale.  *See id.* at 81.  This reading of *Stephens* is consistent with
> our prior caselaw, namely, "'[A] person is under an obligation to read a contract
> before signing it, and will not as a general rule be heard to complain of an oral
> misrepresentation the error of which would have been disclosed by reading the
> contract.'"  *Ballard v. Commercial Bank of DeKalb*, 991 So. 2d 1201, 1207 (Miss.
> 2008) (quoting *Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington
> Lumber & Supply Co.*, 584 So. 2d 1254, 1257 (Miss. 1991)).  On the other hand,
> if the plain language of the policy does not clearly contradict the agent's
> representations such that the insured is put on notice, a fraud claim accrues when
> the insured becomes aware of the misrepresentation.  *See Stephens*, 850 So. 2d at
> 84–85.  In other words, the discovery exception of Section 15-1-49(2) applies, so
> that the statute of limitations begins to run when the insured discovers or should
> have discovered the alleged misrepresentations.

14 So. 3d at 693 (footnote and other citations omitted).  Applying this standard to the facts before

it, the Mississippi Supreme Court found a question of fact whether the policy language placed the

insured on notice.  *Id.* at 694; *see also Bank of Commerce*, 73 So. 3d at 1111 (holding under

*Weathers* that ambiguous policy did not place insured on notice at time of sale but affirming

summary judgment based on subsequent notice).

This case is more like *Stephens* than *Weathers*.  For starters, Plaintiffs' entire case is

premised on the inconsistency between what Mims told Birdsong and what the contract actually

contained.  As Plaintiffs themselves explain, the contract made "no express reference to the

bonus . . . ."  Pls.' Resp. [44] at 4.  Thus, they are left arguing that the parties "understood and

intended" that bonuses would be paid.  *Id*.  In fact, the alleged breach is premised on Defendants' decision to reduce the non-guaranteed benefits for reasons not specified in extra-contractual documents and statements.  But as stated in *Stephens*, "[a]ny alleged oral agreement in this case does not have any effect on the written insurance contract."  850 So. 2d at 83 (citation omitted).

The closest Plaintiffs come to showing that the policy language did not clearly contradict the agent's representations is a footnote referencing a September 24, 1991 "*Target* bulletin." Pls.' Resp. [44] at 4 n.1 (citing Ex. 3).  Plaintiffs describe the bulletin—which was sent to Mims—as revealing that the bonus guarantees would not be "expressly *included* with the insurance policies."  *Id*. (emphasis added).  If Birdsong was actually told that the policies would exclude the promises Mims made, then receiving the policies would not place him on notice. But it is not apparent that the bulletin actually conveyed that message.  And even if it did, Plaintiffs have not cited any evidence that Birdsong ever received the document or was told that the policies would exclude reference to the bonuses.  First, the bulletin was dated after Birdsong applied for the policies.  Second, although Mims testified that he relied on the bulletin to tout the policies, he did not mention informing Birdsong that the policies would exclude reference to the bonuses.  Third, when Birdsong was asked in his deposition whether he had independent recollection of having discussed the bulletin, he stated, "I don't know.  I don't remember the specifics  of discussing it."  Def.'s Mot. [40] Ex. B, Birdsong Dep. at 62.[2]

---

[2]Plaintiffs' Memorandum did not reference the testimony regarding the bulletin, and while the Court attempted to consider the record as a whole, it was under no duty to consider testimony that was not specifically cited.  Fed. R. Civ. P. 56(c)(3).  If additional testimony was inadvertently overlooked, it would not be considered at this point.  *Id*.; *see also Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010).

Finally, if the Court were to make the speculative leap and find that Birdsong knew the policies would exclude reference to the bonuses, it would conflict with Birdsong's testimony that he read the policies and was surprised by the absence of any such language:

> Q.   Dr. Birdsong, have you read the policy?
>
> A.   I have not, at least not in the last 20 years.
>
> Q.   The—I will represent to you that the policy and this document we're looking at does not address the bonus.
>
> A.   And I agree with that.
>
> Q.   Is that surprising to you?
>
> A.   It is since that was discussed as a—to entice me into taking the policy.  *Yet, when I got the policy, that's not in the policy*.  That's surprising that the company did not have that information written in there.

*Id*. at 38 (emphasis added).  This testimony further negates the disputed fact that drove the *Weathers* decision.  By Plaintiffs' own admission, the contract contradicted Mims's alleged representation.  Birdsong was on notice when he received the policies, and the claims are time barred.  *Stephens*, 850 So. 2d at 83.[3]

---

[3]Even assuming Birdsong was not then on notice, other events before the statutory window placed Plaintiffs on notice "that there [was] a possible problem with the insurance polic[ies]."  *Bank of Commerce*, 73 So. 3d at 1110.  For example, Mims received notice in 2006 that the bonuses were being reduced.  Defs.' Mot. [40], Ex. L, 2006 Annual Policy Summaries.  *See Great Am. Ins. Co. of N.Y. v. Lowry Dev., LLC*, 576 F.3d 251, 258 (5th Cir. 2009) (applying Mississippi law and concluding that letter sent by insurer to insured's agent put insured on notice that subsequent renewal policy would not provide wind coverage included in originally issued policy).

b.       Mississippi's Borrowing Statue

Plaintiffs never adequately address why receipt of the policies in 1991 failed to

provide notice.  They argue instead that notice occurred in Spring 2008.  If so, the claims

are still time-barred because Mississippi would borrow Alabama's two-year statute of

limitations.  Miss. Code Ann. § 15-1-65.  This holding requires two *Erie* guesses, and

given the ruling in the previous section, the Court is reluctant to proceed much further.  It

will do so only to provide a complete record for appeal but will limit the Order to a

summary of the core holdings.

First, Mississippi would apply the center-of-gravity test to determine whether the

claims accrued in Alabama.  *See* Jeffrey Jackson, *Legislative Reform of Statutes of*

*Limitations in Mississippi: Proposed Interpretations Possible Problems*, 9 Miss. C. L.

Rev. 231, 282 (1989).  Second, Mississippi would adopt Section 192 of the Restatement

(Second) of Conflict of Laws because it has adopted other contract-specific tests from the

Restatement.  *See Zurich Am. Ins. Co.*, 920 So. 2d at 434 (noting that Mississippi has

adopted "section 188 governing contracts in general and section 193 governing casualty

insurance contracts").  Third, under § 192 Birdsong's Alabama residence dictates applying

Alabama law absent a more significant relationship under § 188(2) of the Restatement.

*See* Restatement (Second) of Conflicts of Law § 192 cmt. c (1971).  Fourth, the facts

occurring in Mississippi address subparts (a) and (b) of § 188(2), but the balance of factors

point to Alabama as the state with the most significant relationship because none of the

parties reside in Mississippi and Alabama is the place of performance, location of the

subject matter, and the domicile of the insured.  Fifth, even if Mississippi chose to apply

9

the outdated territorial approach of the First Restatement, Plaintiffs are factually incorrect that the last significant event (*i.e.*, notice) occurred when Birdsong returned to Mississippi from Alabama for a highschool reunion.  Though Birdsong saw Mims at the reunion, nothing substantive was mentioned, and the evidence is undisputed that any problems with the policy were discussed when Mims called Birdsong a month or two later.  Defs.' Supp. Mem. [53] Ex. Q, Birdsong Dep. at 75–76, 80–82; *Id.* Ex. R, Mims Dep. at 100–02, 125–26; *see also* Restatement (First) of Conflict of Laws § 377, cmt. a, Rule 4 (1934) ("[T]he place of wrong is where the loss is sustained, not where fraudulent representations are made.").  Because the claim accrued in Alabama, Mississippi's borrowing statute applies, and the claim is time-barred even if notice occurred in Spring 2008 as Plaintiffs suggest.

### 2.    Bad-faith Breach-of-Contract Claim

The parties agree that the borrowing statute has no effect on Plaintiffs' bad-faith breach-of-contract claim.  Defs.' Supp. Reply [55] at 12 n.10.  But even if the claims are not time-barred for having accrued prior to Spring 2008, Plaintiffs fail to establish that Defendants breached any contract between the parties.

"Although styled a tort, an action for bad-faith breach of contract is created by contract and requires proof of a breach of contract." *Schoonover v. W. Am. Ins. Co.*, 665 F. Supp. 511, 516 (S.D. Miss. 1987) (citation omitted).  "Where there is no breach of contract, there can be no tortious breach of contract." *Williams v. Liberty Mut. Ins. Co.*, No. 2:10cv205-KS-MTP, 2011 WL 5183572, at *6 (S.D. Miss. Oct. 31, 2011) (citation omitted).

10

Here, no record evidence suggests that Defendants breached the written insurance policies they issued to Plaintiffs.  And while Plaintiffs argue that payment of the policy bonuses as Mims represented "was a part of the bargain between the parties," there is no dispute that the written insurance policies lack any reference to the non-guaranteed policy bonuses.  Pls.' Resp. [44] at 17; *see* Defs.' Supp. Mem. [53] Ex. Q, Birdsong Dep. at 38. Instead, the policies contain an integration clause, indicating that the policies and their applications comprise "[t]he entire contract."  Defs.' Mot. [40], Ex. H, Policies at Lincoln/Birdsong000209.  And the application likewise states:  "The agent has no authority to make, modify, alter or discharge any policy or the terms of this or any other agreement with the company."  *Id.*, Ex. G, Applications at Mims.Subpoena000120.  Such clauses are effective in Mississippi and

> signal to the courts that the parties agree that the contract is to be considered completely integrated. A completely integrated agreement must be interpreted on its face, and thus the purpose and effect of including a merger clause is to preclude the subsequent introduction of evidence of preliminary negotiations or of side agreements in a proceeding in which a court interprets the document.

*B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 490 (Miss. 2005) (quoting *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 372 (6th Cir. 1999) (citations omitted)). Put simply, the alleged promise on which Plaintiffs rely was not a part of the "entire contract" between the parties.  As such, Plaintiffs have not established that Defendants breached the insurance policies when they reduced the policy bonuses.  Plaintiffs' claim for bad faith breach of contract therefore fails.

B.      Motion to Strike

Defendants argue that Plaintiffs Affidavit from Mims, submitted in opposition to Defendants' Motion for Summary Judgment, should be struck because the testimony amounts to an interpretation of the policies' language and the legal effect thereof, which are "question[s] of law for the court." *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1096 n.5 (5th Cir. 1995).  But the disputed portions of the affidavit actually highlight the fact that Plaintiffs are asserting breach based on representations that were not contained in the policies.  In any event, the Court has granted summary judgment and the motion is therefore moot.

IV.    Conclusion

The Court has considered all of the parties' arguments.  Those not addressed would not change the result.  For the foregoing reasons, Defendants' Motion for Summary Judgment [40] is granted and their Motion to Strike [47] is denied as moot.  A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 17th day of October, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

12